# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FUQUAN Y. HILL, | ) | Civil Action No. 2: 13-cv-1202 |
| | ) | |
| Plaintiff, | ) | |
| | ) | United States Magistrate Judge |
| v. | ) | Cynthia Reed Eddy |
| | ) | |
| C. O. CHURNEY, individually and in his | ) | |
| official capacity, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Presently pending is the Motion to Dismiss filed by Defendants, with brief in support (ECF Nos. 29 and 30), the brief in opposition filed by Plaintiff (ECF No. 35), and the Reply Brief filed by Defendants (ECF No. 37).[2] For the reasons that follow, the Motion will be granted.

### Factual Background

Plaintiff, Fuquan Y. Hill, is a state prisoner committed to the custody of the Pennsylvania Department of Corrections and at all times relevant to this lawsuit was incarcerated at SCI-

---

[1]    All parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636 *et seq*.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 32 and 39).

[2]    The Court converted that portion of the Motion to Dismiss which contends that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act into a Motion for Summary Judgment. In all other respects, the Court has construed the Motion to Dismiss as is and Plaintiff has responded accordingly. Defendants filed a Concise Statement of Undisputed Material Facts and Appendix (ECF Nos. 33-34). Plaintiff responded by filing what he entitled "Motion for Leave to File an Amended Complaint (ECF No. 35), to which he attached a document entitled "Amended Complaint." Notwithstanding Plaintiff's characterization, ECF No. 35 is in reality a brief in opposition to Defendants' motion to dismiss / motion for summary judgment. Defendants, in turn, filed a brief in opposition to Plaintiff's motion for leave to file an amended complaint, which the Court will treat as a Reply Brief (ECF No. 37).

Greene. Named as Defendants are the following Department of Corrections ("DOC") and/or SCI-Greene officials and employees: C.O. Churney, C.O. Hudock, F. Nunez, Hearing Examiner; Captain Haywood, Lorinda Winfield, Deputy Superintendent; CCPM Jeffrey Rogers; Swartz, Unit Manager; Tracy Shawley, Facility Grievance Coordinator; DSCS Robert Gilmore, Major David Grainey, David Yanak, Wallace Leggett, Major of Unit Management; Superintendent Louis Folino, John Wetzel, Deputy Wetzel, Jeffrey Witherite, Michael Smith, and Robin M. Lewis, Chief Hearing Examiner. All defendants are named in both their individual and official capacities. Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

According to the Complaint, on November 12, 2012, while walking on the prison yard track with two other inmates, Plaintiff accidentally bumped into Defendant Corrections Officer Churney ("Churney"), who was walking with Defendant Corrections Hudock ("Hudock") along the same track but in the opposite direction. According to the Complaint, Plaintiff apologized and then continued walking on the track. The next time around the track, Plaintiff again accidentally bumped into Churney and Plaintiff again apologized.

After the second bump, Churney accused Plaintiff of assault, took his ID, and sent him back to his block. Churney wrote Plaintiff a misconduct for assault (Misconduct Number A830185) in which he described the bump as follows: "Inmate Hill GW3029 intentionally thrust his shoulder into my chest and stated, 'Can't you see I'm walking, you need to move'." (ECF No. 34-1). On November 19, 2012, Misconduct Number A830185 was dismissed without prejudice; the next day, on November 20, 2012, Churney filed a second Misconduct Report (Misconduct Number A354495), which was identical to the first misconduct report with the addition of the following two sentences: "I then notified my yard sergeant. Report delayed due to DWOP." *Id.* On November 26, 2012, Plaintiff was found guilty of Misconduct Number

A354495 and sentenced to 30 days in disciplinary custody. Plaintiff alleges that the manner in which he was found guilty of the misconduct violated his due process rights under the Fourteenth Amendment because his inmate witness was not allowed to testify, he was not allowed to testify, the misconduct report by C.O. Churney was falsified, and the hearing examiner was prejudiced and biased against him. He also claims that the RHU's conditions of confinement violated the Eighth Amendment's prohibition on cruel and unusual punishment.

After Plaintiff had completed his time in disciplinary custody, at the recommendation of the Program Review Committee ("PRC"), he was placed in administrative custody (AC) status, rather than released to general population, because he was considered "a danger to himself or others." (ECF No. 29-2, at 6.) Plaintiff alleges that he was placed and kept on AC status in retaliation for continuing to protest his innocence of the assault and "because this Administration wants to cover up the fact that no assault ever occurred." (ECF No. 35-2 at 10.) Plaintiff remained in AC status through several reviews by the PRC, for a total of 90 days.

Plaintiff alleges through his Complaint that on February 1, 2013, while still on AC status, Defendant Hudock, who was walking with Churney on the prison yard track, approached Plaintiff and told him that there was no assault in contradiction to what Churney had alleged. Plaintiff filed two grievances, wrote requests to staff members, and wrote letters to various prison officials claiming that this newly discovered evidence proved that the misconduct contained false allegations, but he was afforded no relief.

**Standard of Review**

A. <u>Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard</u>

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and

allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, ' "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol.*

*Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

Finally, a court must employ less stringent standard when considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dlunos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

B.    <u>Motion for Summary Judgment</u>

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Brown v. Grabowski,* 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting *Anderson,* 477 U.S. at 251–52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. *Anderson,* 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir. 1990).

<h1 style="text-align:center">Discussion[3]</h1>

A.    <u>Due Process</u>

To assert a right to procedural due process, Plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence." *Dunbar v. Barone*, 487 F. App'x 721, 724 (3d Cir. 2012) (non precedential) (addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct hearing) (citing *Wolff v. McDonnell,* 418 U.S. 539, 566–67 (1974)). "But, this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Dunbar*, 487 F. App'x at 724–25 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*). To determine if an inmate's placement was atypical, the Court considers "the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Shoats,* 213 F.3d at 144.

---

[3]    Plaintiff off-handedly states that his Fifth Amendment and Equal Protection rights under the Fourteenth Amendment have also been violated. However, Plaintiff provides no basis for these claims. Accordingly, such claims, to the extent they were properly raised, are dismissed as frivolous and for failure to state a claim.

Here, Plaintiff was housed in disciplinary custody for thirty (30) days as a result of the misconduct. He does not allege any facts showing that the length of his confinement, or the conditions of his confinement in the RHU, amounted to an "atypical and significant hardship" under *Sandin* so as to deprive him of a protected liberty interest. S*ee Williams v. Armstrong,* -- F. App'x ---, 2014 WL 1779250 (3d Cir. May 6, 2014) (112 days in the RHU cannot be deemed atypical); *Edmonds v. Sobina,* 296 F. App'x 214 (3d Cir. 2008) (90 days in the RHU not an "atypical and significant hardship"). Therefore, the Court finds that the duration of Plaintiff's segregation cannot be deemed atypical. Accordingly, he does not have a protected liberty interest and is not entitled to procedural due process protection. Because Plaintiff's due process rights were never triggered, the Court will dismiss Plaintiff's due process claim without leave to amend, as amendment would be futile.

## B.  Eighth Amendment

Plaintiff next claims that the same allegations that gave rise to his due process violation also violated his right to be free from cruel and unusual punishment under the Eighth Amendment. Federal courts in Pennsylvania unanimously have found that confinement in restrictive housing conditions, without more, does not violate the 8th Amendment. *Griffin v. Vaughn,* 112 F.3d 703 (3d Cir. 1997) (holding that restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000). In reviewing conditions of confinement claims, courts

have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. *See Wilson v. Seiter,* 501 U.S. 294, 304–05 (1991). Moreover, the focus must be on the deprivation of a particular basic necessity.

Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement in the RHU deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety. Therefore, this claim will be dismissed without leave to amend, as amendment would be futile.

C.    Retaliation

Defendants argue that Plaintiff's retaliation claim should be dismissed because he failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which prohibits prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. *See* 42 U.S.C. § 1997e(a).

Through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted.  Specifically, the Act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.

2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." *Small v. Camden County*, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[4] The requirement that an inmate exhaust administrative remedies applies to all inmate lawsuits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n. 12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

Moreover, the PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Id*. at 83.[5]

---

[4] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.' " *Small*, 728 F.3d at 270 (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). *See also Nyhuis v. Reno*, 204 F.3d 65, 69 n. 4 (3d Cir. 2000) ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5] *See also Spruill v. Gillis*, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [ . . . ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan,* 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, courts have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman,* 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris*, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were

---

to frivolous prisoner lawsuits.").

removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. An appeal of the decision to place an inmate in Administrative Custody ("AC") is a two-step procedure and is set forth in DC-ADM 802. Step 1 permits an inmate to appeal the decision of the PRC concerning his initial confinement in AC to the Facility Manager / designee. If dissatisfied with the decision of the Facility Manager / designee, the inmate may proceed to Step 2 and file an appeal with the Office of the Chief Hearing Examiner. The inmate's right to appeal terminates when he is released from AC. DC-ADM 802 at 2-2, 2-3. Plaintiff's compliance with Step 2 is at issue in this case.

Attached to his Complaint, Plaintiff attached his misconduct appeals and grievances related to the misconduct for assault. The grievances (Nos. 454118 and 455509) deal solely with the alleged new evidence he received from C.O. Hudock and both grievances were rejected.

Plaintiff also filed an appeal of his detention in AC following the expiration of his disciplinary custody sentence (AC B496831), which appeal was denied by SCI-Greene Superintendent Louis Folino. Defendants contend that Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim as he did not properly appeal Superintendent Folino's decision to the Office of the Chief Hearing Examiner. In support, they have produced the Declaration of Chief Hearing Examiner Robin M. Lewis in which she states as follows:

> 1.      I am presently employed by the Commonwealth of Pennsylvania, Department, as the Chief Hearing Examiner.

2.      I reviewed our electronic records and paper files to determine whether inmate Fuquan Hill appealed SCI-Greene's program review committee (PRC) decision AC B496831 to me as set forth in DC-ADM 802 p. 202 concerning appeals of PRC administrative custody decisions.

3.      I determined that Inmate Hill did not appeal AC B496831 to me.

(ECF No. 29-2, ECF No. 35-2; Declaration of Robin M. Lewis.)

Plaintiff disputes the information contained in the Lewis Declaration and attaches what appears to be a handwritten appeal letter dated January 8, 2013, addressed to Chief Hearing Examiner Robin Lewis (ECF No. 35-2).   After receipt of Plaintiff's response, Defendants again reviewed the Chief Hearing Examiner's electronic records and paper files and have submitted the Declaration of Timothy Holmes, an attorney employed by the Commonwealth of Pennsylvania, Department of Corrections, who states that the Lewis Declaration is accurate. (ECF No. 37-1). Even assuming the veracity of Plaintiff's argument, the summary judgment record reflects that Superintendent Folino did not deny Plaintiff's lower level appeal until January 15, 2013, a week after the January 8, 2013, letter was written.  (ECF No. 35-2, at 11.)  An appeal to the Chief Hearing Examiner cannot be filed until the inmate has received the Facility Manager's decision. Therefore, any appeal to the Chief Hearing Examiner on January 8, 2013 would have been rejected as premature.

Plaintiff also argues that the January 18, 2013 letter he received from Chief Hearing Examiner Lewis is further evidence that the Chief Hearing Examiner reviewed his appeal in AC B496831.  However, this correspondence was issued in the course of investigating Misconduct A354495, not the PRC's decision to place Plaintiff in AC status.

The Court finds that the summary judgment record is void of any evidence which reflects that Plaintiff exhausted his administrative remedies for AC B496831.  *See Small v. Camden County,* 728 F.3d 265, 271 (3d Cir. 2013) (holding that "judges may resolve factual disputes

13

relevant to the exhaustion issue without the participation of a jury.") Accordingly, the Court finds that summary judgment should be granted on Plaintiff's retaliation claim.

4.    Personal Involvement

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 537 n. 3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." *Id.*

Importantly for this case, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances. *See Dellarciprete,* 845 F.2d at 1208. The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. *See Simonton v. Tennis,* 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *Manns v. Bledsoe,* 2011 WL 4048781, at *4 (M.D.Pa. Sept.12, 2011); *Wilkerson v. Schafer,* 2011 WL 900994, at *7 (M.D.Pa. Mar.14, 2011) (allegations that defendants "should be held liable for due process violations because they should

have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); *Ramos v. Pa. Dept. of Corr.,* No. 06–1444, 2006 WL 2129148, at *2 (M.D.Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Applying this standard here, the Complaint alleges no personal involvement by Defendants Haywood, Swartz, Folino, Lewis, Witherite, Wetzel, Gruiney, and Shawley that could give rise to any claim against them. Accordingly, all claims against these Defendants will be dismissed without leave to amend, as amendment would be futile.


### Conclusion

For all the foregoing reasons, the Motion to Dismiss, which has been converted in part to a Motion for Summary Judgment, filed by Defendants will be granted. An appropriate Order follows.

**AND NOW**, this 11th day of June, 2014,


It is hereby **ORDERED, ADJUDGED and DECREED** that Defendants' Motion to Dismiss, which was converted in part to a Motion for Summary Judgment, is **GRANTED** in its entirety.


**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED.**

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     FUQUAN Y. HILL
        GW3029
        175 Progress Dr.
        Waynesburg, PA 15370

        Timothy Mazzocca
        Office of Attorney General
        Email: tmazzocca@attorneygeneral.gov